Jackson et al. vs. Jones et al.

---

John M. Jackson, et al., plaintiffs in error, vs. Malcom D. Jones, et al., defendants in error.

[1.] The bill, showing that the land, the subject of the suit, is owned by several tenants in common, some of whom are alleged to have made valuable improvements on parts of it, and showing other equities *prima facie,* against the defendants, is not without equity, and to be retained for a hearing.

[2.] The answer displacing a part only of the equity of the bill, is not sufficient for a dissolution of an injunction granted in the cause.

In Equity, from Murray county. Decided by Judge Trippe, February Term, 1858.

A demurrer was filed for want of equity, to a bill which had been filed by the defendants in error for an injunction. This demurrer was overruled by the Court.

Answers having been filed, the defendants moved the Court to dismiss the bill and dissolve the injunction which had been granted, on the grounds that all the equity in the bill, if any, had been sworn off, and that there was no equity in the bill.

The complainants in the bill alleged, that Elizabeth Clark, of McIntosh county, drew lot of land No. 245, in the 9th district and 3d section, and that a grant to this lot was issued in 1830; that the said Elizabeth Clark, in 1833, sold the lot of land to John F. Williams, who, in the same year, sold it to Robert Young; that Robert Young, in the same year, 1833, sold the said lot to Abner E. Halliday; that in 1834, Halliday sold to Matthew Jones, of Burke county, one-third part of said lot; that Halliday and Jones, in 1834, gave one-fourth of the lot to the Justices of the Inferior Court of Murray county, on condition that the Court House should be built thereon, and gave a power of attorney to Wm. N. Bishop to lay off and convey it to said Court for that purpose; that the said lot originally contained 160 acres; that Jones and Halliday gave each one-fourth of their interest, which left Halliday 80 acres and Jones 40, and Halliday, in his life time, disposed of one-half of his interest, 40 acres, to Wm. N. Bishop, and two town lots were reserved to Halliday and Jones; that in 1837, William McGehee, as Sheriff of Murray county, sold under execution against Wm. N. Bishop, one undivided 40 acres of 120 acres, and that Jacob Shotwell became the purchaser; that James Morris claimed to be the owner of the 40 acres sold as the property of Bishop; that the two town lots reserved in the town of Spring Place were sold and conveyed by Halliday and Jones two years before; that Abner E. Halliday died intestate, and that Matthew Jones obtained letters of administration to his estate, and obtained an order to sell the land, and sold the same at public sale before the Court House

Jackson et al. vs. Jones et al.'

door at Spring Place, on the 1st Tuesday in September, 1837, to Alexander and Jacob Shotwell and Spencer Riley, for $1,000, in two payments of $500 each; that the said Jones accounted for and paid over to the heirs the said amount; that the said Halliday left his widow and two daughters his heirs-at-law, and that P. H. Maubrey was, in 1838, appointed guardian of the daughters; that the said Matthew Jones having fully administered the estate of the said Halliday, applied for letters dismissory from such administration, but died intestate before the publication was complete; that Allen Jamerson and Mitchell B. Jones administered on the estate of the said Matthew Jones, and obtained letters dismissory of his estate from his administration on Halliday's estate; that the said Matthew Jones returned the $1,000 for the land sold, and accounted for it, but that no part of it was ever received by him—Alexander and Jacob Shotwell and Riley proving insolvent—and that the administrators of Matthew Jones rescinded the contract, and gave up the notes, and cancelled the bond; that when the notes were cancelled and the bond given up, the title to the land vested in the heirs-at-law of Matthew Jones, and that even if he had not paid, after the administrators of Jones received the bond back, and gave up the notes, and were discharged from the administration on Halliday's estate, the land vested in equity in the heirs-at-law of Matthew Jones; that Matthew Jones, at the same time that he sold the 40 acres of Halliday's estate, sold his own 40 acres to the same parties, and for the same price; and that this contract was also cancelled at the same time by the administrators of the said Matthew Jones; that the whole 80 acres were turned over to the heirs-at-law of the said Matthew Jones, and that one of them, James M. Jones, died, and Malcolm D. Jones administered on his estate; that after the death of the said James M. Jones, the only persons interested in the said land were Malcolm D. Jones, Francis A. Jones, Mary Jones and Mitchell Jones, and that Mary Jones and Mitchell Jones were minors, and that Malcolm D. Jones was

appointed their guardian; that the said Jacob Shotwell and Spencer Riley transferred their interests in the said 80 acres of land to Alexander Shotwell, who sold the same to the administrators of Matthew Jones; that Malcolm D. Jones, as such guardian, applied for and obtained an order to sell the interests of Mary and Mitchell Jones in the said land, and that he sold the same; and at the same time the interests of the said Malcolm D. and Francis Jones were also sold; that the said land was sold by them to James Edmondson, for $2,200, excepting therefrom certain portions in the possession of Bell, Buchanan and Turner; that since the sale Mary Jones had intermarried with Joshua R. Price, and the guardian, M. D. Jones, had settled with him, and paid him his share of the money. That the widow of the said Halliday died, leaving the said Cornelia and Amelia her heirs-at-law; that the said Amelia had intermarried with John M. Jackson of Whitfield county; that the said John M. Jackson, and his wife, Amelia, and Cornelia Halliday, finding that no deed to the part of the land sold to the Shotwells and Riley had been executed by the said Matthew Jones, but knowing that the money for which it was sold had been received by them, had sued the complainants in an action of ejectment, and had laid a demise in the names of Elizabeth Clark and Robert Young, neither of whom had then an interest in the land, and that the said Elizabeth Clark died before the commencement of the action; that the said defendants to that action had confessed judgment and entered an appeal; that although James Morris had been made a defendant in said action, it was only as a matter of form, there being a secret understanding amongst them that the said Morris should lose nothing, but that only that part of the land should be recovered which had been sold to Edmundson; that the Joneses, and those holding under them, were the only persons entitled in equity to hold the land, and before the plaintiffs were entitled to recover the same, they ought to be compelled to pay into Court $1,000 and interest, for the use of the Joneses; that the plain-

tiffs ought not to recover in said action because, after Jones sold the land to Edmundson, he took possession of the same, and not knowing that the said Jackson and his wife Amelia, and Cornelia Halliday, had any claim to the land, had made improvements upon the same to the amount of $2,000, and that others had made improvements; and that the said plaintiffs should pay said complainant for permanent improvements before recovering said land. The complainants therefore prayed for a discovery and an injunction restraining the said defendants, Jackson and his wife Amelia, and Cornelia Halliday, from prosecuting the said action of ejectment.

An injunction was granted according to the prayer of the bill.

The defendants, John M. Jackson, and his wife Amelia, and the said Cornelia Halliday, by their answers deny that the said Matthew Jones, after obtaining the order to sell the land, ever advertised it according to law, or that he sold it by public sale as charged in the bill, but that it was purchased at private sale. They denied—said defendants Amelia and Cornelia—that, so far as they knew and believed, the said Matthew Jones ever returned the amounts of the notes given for the lands, or accounted for and paid over the same to the heirs and distributees of said estate. They also denied that the said Matthew Jones ever fully administered or did his duty with respect to the estate, but stated that he failed so to do, as he never made any inventory, and that there was certain property disposed of by him, of which he made no, or only partial returns, which property the defendants specified in their answers; and that thus he was indebted to the estate to the amount of sixteen or seventeen hundred dollars. They also denied that Matthew Jones paid over to the said Mary Halliday, or to their guardian for them, their full distributive shares of the estate. The defendants further answered, that the order, if any, dismissing the said Matthew Jones from the

administration of the estate of the said Halliday, was fraudulently obtained, it having been taken two years after the petition of the said Matthew Jones for dismission, and without, any further application; that if Matthew Jones had lived, the guardian of the said Amelia and Cornelia would have objected to his obtaining such an order; but when Matthew Jones died, it was supposed his application died with him. The defendants denied that there was any legal sale of the land to the Shotwells and Riley, or that the administrators of Matthew Jones had any right to cancel the alleged sale, or to appropriate the said land, as such administrators. The said defendants alleged, that they and the said Mary Halliday were the sole owners of the said 80 acres of land, and not the heirs of the said Matthew Jones. The defendants admitted that they brought the action, confessed judgment, and entered the appeal as charged, but denied that there was any secret understanding with the defendant, James Morris, that if they recovered the land he should lose nothing.

James Morris, by his answer, admitted the facts substantially as stated in the bill, but denied that there was any collusion or secret understanding between himself and the plaintiffs, as to the said action of ejectment.

After argument had upon the motion to dissolve the injunction, the Court refused to dissolve the same, and the respondents' counsel excepted, and assign the same as error.

WALKER, for plaintiffs in error.

AKIN, contra.

By the Court.—McDONALD, J. delivering the opinion.

[1.] The land which is the subject of the suit, in the action of ejectment, if the allegations of the bill be true, was held

Jackson et al. vs. Jones et al.

by several of the parties as tenants in common, and some of them had put expensive improvements on a part of it; it had never been divided, and the complainants ask an injunction of that action. They allege that the improvements were made in good faith. The bill exhibits a very complicated state of things, on the part of the administrator of Halliday and his administrator, the latter carrying out, to say the least of it, most extraordinarily, the application of the former for letters dismissory from his administration. The bill for the protection of the several purchasers of distinct portions of the land in controversy, calls for a settlement of the administration, expecting to show that the persons claiming the land, or a part of it, now, as heirs-at-law of Halliday, have received the proceeds of the sale, and that by that act, and a long acquiescence in what has been done in relation to it, are barred in equity from calling them to account. It is true that the bill does not present a very strong equity in this aspect of the case, yet it may be best to investigate these matters fully.

We think that the Court ought to have overruled the demurrer to the bill, and to have refused the motion to dismiss the bill.

[2.] The answers do not displace the equity of the bill, so far as the rights of the complainants, as tenants in common with the defendants, admitting the title of the latter to be good, are concerned. But they produce strong circumstances to show that the administrator of their deceased father's estate had not fully accounted.

The evidence furnished from the record of his returns, copies of which are made exhibits to the bill, are far from conclusive on that point; nor is the argument that upon the cancellation of the contract of sale made by the administrator on Halliday's estate, the title vested in the estate of the administrator, instead of the estate of Halliday. The equity of this branch of the case must be made out by proof at the hearing. The records are unsatisfactory as to that.

We think that justice to all parties requires that this cause should undergo a thorough and deliberate investigation, and that the injunction should be retained until that takes place.

Judgment affirmed